## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS M. BOILEVE, D.C., an Illinois resident, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | **CLASS ACTION** |
| IQVIA INC., a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, CARLOS M. BOILEVE, D.C. ("Plaintiff"), brings this action on behalf of himself and all others similarly situated, through his attorneys, and except as to those allegations pertaining to Plaintiff or his attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, IQVIA INC. ("Defendant"):

## PRELIMINARY STATEMENT

1. This case challenges Defendant's practice of sending unsolicited advertisements via facsimile.

2. The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 (hereafter "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from sending fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action and provides statutory damages of $500 per violation. Defendant has sent a facsimile transmission of an unsolicited advertisement to Plaintiff and, on

information and belief, to the proposed Class in violation of the TCPA, including, but not limited to, the facsimile transmission of an unsolicited advertisement on or about April 13, 2016 ("the Fax"), a true and correct copy of which is attached hereto as Exhibit A and made a part hereof. The Fax seeks participants for Defendant's *Elite* Mobile Research Program.

3.     On information and belief, Defendant has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the TCPA, including but not limited to those advertisements sent to Plaintiff.

4.     Defendant's unsolicited faxes have damaged Plaintiff and the class in that a junk-fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax intrudes into the recipient's seclusion and violates the recipient's right to privacy. Unsolicited faxes occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

5.     On behalf of himself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA. Plaintiff seeks to certify a class including faxes sent to Plaintiff and other advertisements sent without proper opt-out language or without prior express invitation or permission during the class period, whether sent to Plaintiff or not.

6.     Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA. This action seeks relief

expressly authorized by the TCPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8.      This Court has personal jurisdiction over Defendant because Defendant transacts business within this judicial district, has made contacts within this judicial district, and/or has committed tortious acts within this judicial district.

## PARTIES

8.      Plaintiff, CARLOS M. BOILEVE, D.C., is an Illinois resident.

9.      Defendant, IQVIA INC. is a Delaware corporation with its principal place of business in Danbury, CT.  ImpactNetwork is owned and operated by IQVIA, as stated in ImpactNetwork's website, *see* https:/secure.myimpactnetwork.com/Privacy.

## FACTS

10.      On information and belief, Defendant is a for-profit corporation that provides, among other services, market research through its subsidiary, ImpactNetwork.

11.      On information and belief, Defendant, as part of its market research and services, conducts surveys on behalf of its clients to gather data for its clients' marketing and sales needs. Defendant receives payment for providing this information to its clients.

12.     On or about April 13, 2016, Defendant sent an unsolicited research study request to Plaintiff using a telephone facsimile machine, computer, or other device.  *See* Exhibit A. Plaintiff received the Fax on a stand-alone fax machine.

13.     The Fax contains no opt out notice. The Fax was sent using a telephone facsimile machine, computer, or other device, as alleged in ¶ 12, and as reflected in the "header" of the Faxes.  *See* Exhibit A.

14.     The April 13, 2016 Fax states in part the following:

## *ImpactNetwork*

### *Elite* Mobile Research Program

**Complimentary iPhone or iPad & $100 Per Month**

**Or $150 if you use your personal iPhone or iPad**

Unique Invitation Code:  **HOLM8165**

Nearly 4,000 top physicians cased an honorarium check this month in exchange for their thoughts, opinions and expertise on treatment options. Join them today!

Limited spots are available in the Impact Network Elite research program Our exclusive community of physicians provides deep insight into available treatment options.

Enter the URL below to watch a short YouTube
Video about our program and incentives!

http:/ /bi.ly /1T3QmY5

**How to Join**
1.  Go to http://www.myimpactnetwork.com
2.  Enter your invitation code:  **HOLM8165**
3.  Click Learn More under Impact Network Elite
4.  Review study information.  Click *Join Impact Network Elite* to register.

**Contact us**

Feel free to contact us at 866-467-2287 or support@myimpactnetwork.com

15.     ImpactNetwork's    website,    www.myimpactnetwork.com,    sets    forth    the commercial availability and the quality of Defendant's research services, stating "Impact Network is the leading market research community for physicians and healthcare providers in the US."

16.     The Fax is a generic invitation to physicians calling to their attention that the service of survey takers is desired by Defendant.  In exchange for participating in the "*Elite* Mobile Research Program," physicians would receive a "Complimentary iPhone or iPad & $150 Per Month Or $150 if you use your personal iPhone or iPad" from Defendant.  *See* Exhibit A.

17.     The Fax is an offer by Defendant to "buy" a service from Plaintiff and the putative Class (research study takers), and Defendant sells the data collected from this service to its clients and to make recommendations to its clients.  On that basis, the Fax is an advertisement under the TCPA and the regulations implementing the TCPA.

18.     Plaintiff did not give "prior express invitation or permission" to Defendant to send the Fax.

19.     On information and belief, Defendant faxed the same and other unsolicited facsimiles advertisements without the required opt-out language to Plaintiff and at least 40 other recipients or sent the same and other advertisements by fax with the required opt-out language but without first receiving the recipients' express invitation or permission and without having an established business relationship as defined by the TCPA and its regulations.

20.     There are no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

21.     Defendant's facsimile attached as Exhibit A does not display an opt-out notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

## CLASS ACTION ALLEGATIONS

22.     In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship, and (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

Excluded from the Class are Defendant, its employees and agents, and members of the Judiciary. Plaintiff seeks to certify a class that includes but is not limited to the fax advertisement(s) sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

23.     Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the proposed Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

24.     Commonality (Fed. R. Civ. P. 23(a)(2)):  Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

        (a)     Whether Defendant sent unsolicited fax advertisements;

(b)     Whether Defendant's faxes sent to other persons, not Plaintiff, constitute advertisements;

(c)     Whether Defendant's faxes advertised the commercial availability or quality of property, goods, or services;

(d)     The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A or other fax advertisements;

(e)     Whether Defendant sent fax advertisements without first obtaining the recipient's prior express invitation or permission;

(f)     Whether Defendant sent the unsolicited fax advertisements willfully or knowingly;

(g)     Whether Defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

(h)     Whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(i)     Whether Defendant should be enjoined from sending fax advertisements in the future;

(j)     Whether Plaintiff and the other members of the class are entitled to statutory damages; and

(k)     Whether the Court should award treble damages.

25.     Typicality (Fed. R. Civ. P. 23(a)(3)):  Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or similar faxes as the faxes sent by or on behalf of Defendant advertising the commercially availability or quality of property, goods, or services of

Defendant during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

26.     Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)):  Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

27.     Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)     Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

(c)     Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d)     The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e)     This case is inherently manageable as a class action in that:

(i)     Defendant identified persons to receive the fax transmissions and it is believed that Defendant's and/or Defendant's agents' computers and business records will enable Plaintiff to readily identify class members and establish liability and damages;

(ii)     Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii)     Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv)     A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)     A class action will contribute to uniformity of decisions concerning Defendant's practices; and

(vi)     As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.***

28.     The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

29.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

30. **Opt-Out Notice Requirements**. The TCPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in section (b)(1)(C)(iii) of the Act, that senders of fax advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following, among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

A. a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

B. a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

C. a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines; and

D. The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from section (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from section (b)(D)(ii) of the Act and the rules and regulations of the FCC in ¶ 31 of its 2006 Report and Order (*In re Rules & Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005*, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in section (b)(2)(E) of the Act and incorporated into the

Opt-Out Notice Requirements via section (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon consumers and businesses giving them the right, and means, to stop unwanted fax advertisements.

31.     **2006 FCC Report and Order.** The TCPA, in section (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A.     The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under section (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in section (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

B.     The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under section (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in section (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

C.     The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under section (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in section (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34).

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements cannot claim the exemption from liability contained in section (b)(1)(C) of the Act.

32.     **The Fax**. Defendant sent Exhibit A on or about April 13, 2016, via facsimile transmission from telephone facsimile machine, computer, or other device to the telephone numbers and telephone facsimile machines of Plaintiff and members of the Class. The Fax constituted an advertisement under the Act and the regulations implementing the Act. Defendant failed to comply with the Opt-Out Notice Requirements in connection with the Fax. The Fax was transmitted to persons or entities without their prior express invitation or permission and/or Defendant is precluded from sustaining the established business relationship safe harbor with Plaintiff and other members of the class, because, *inter alia*, of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiff and members of the Class.  Plaintiff seeks to certify a class which includes this Fax and all others sent during the four years prior to the filing of this case through the present.

33.     **Defendant's Other Violations.**  Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines faxes other than Exhibit A that constitute advertisements under the TCPA that were transmitted to persons or entities without their prior express invitation or permission (and/or that Defendant is precluded from sustaining the established business relationship safe harbor due to its failure to comply with the Opt-Out Notice Requirements). By virtue thereof, Defendant violated the TCPA

12

and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant may be continuing to send unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

34. The TCPA provides a private right of action to bring this action on behalf of Plaintiff and Plaintiff Class to redress Defendant's violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

35. The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members even if its actions were only negligent.

36. Defendant knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendant or anybody else to fax advertisements about the availability or quality of property, goods, or services to be bought or sold; (b) Plaintiff and the other class members did not have an established business relationship; (c) Defendant transmitted advertisements; and (d) the faxes did not contain the required Opt-Out Notice.

37. Defendant's actions caused injury to Plaintiff and the other class members. Receiving Defendant's junk faxes caused Plaintiff and other recipients to lose paper and toner consumed in the printing of Defendant's faxes. Defendant's faxes occupied Plaintiff's and class member's telephone lines and fax machines. Defendant's faxes cost Plaintiff and class members time, as Plaintiff and his employees, as well as other class members and their employees, wasted their time receiving, reviewing, and routing Defendant's unauthorized faxes. That time otherwise would have been spent on Plaintiff's and the class members' business or personal activities.

Defendant's faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of Defendant's advertisements occurred outside of Defendant's premises.

WHEREFORE, Plaintiff, CARLOS M. BOILEVE, D.C., individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant, IQVIA INC., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C.     That the Court enjoin Defendant from additional violations; and

D.     That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Respectfully submitted,

CARLOS M. BOILEVE, D.C., individually and as the representative of a class of similarly-situated persons,

/s/ Ryan M. Kelly
Ryan M. Kelly
Ross M. Good
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
rkelly@andersonwanca